Jennifer A. Giuttari
Elizabeth L. Griffing
American Civil Liberties Union
    of Montana
P.O. Box 9138
Missoula, MT 59802
T: 406–830–3009
jeng@aclumontana.org
betsyg@aclumontana.org
**Attorneys for Plaintiff**

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### HELENA DIVISION

| | |
|---|---|
| WILLIAM DIAZ–WASSMER,<br><br>        Plaintiff,<br><br>vs.<br><br>MIKE FERRITER, in his official capacity; MIKE MAHONEY, in his official capacity; TOM WOOD, in his official capacity; and DENISE DEYOTT, in her official capacity,<br><br>        Defendants. | Case No. 6:10–cv–00060–RKS<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiff William Diaz–Wassmer brings this action against Defendants Mike Ferriter, Mike Mahoney, Tom Wood, and Denise Deyott, and alleges as follows:

### I. INTRODUCTION

1.    Through this litigation, Plaintiff William Diaz–Wassmer challenges the constitutionality of Montana Department of Corrections Policy 3.3.6 ("Policy 3.3.6") and Montana State Prison Procedure 5.4.1 ("Procedure 5.4.1"). Policy 3.3.6 and Procedure 5.4.1, as uniformly interpreted and enforced by Defendants

and prison staff, prohibit all incoming and outgoing mail that is written in a language other than English and authorize prison staff to withhold all such mail. In short, Policy 3.3.6 and Procedure 5.4.1 establish an "English–only" policy with respect to mail incoming and outgoing mail at Montana State Prison.

2. Prisoners do not lose their constitutional rights at the prison gate. Plaintiff, despite his incarceration, maintains his right to freedom of speech and expression under the First Amendment, and his right to equal protection of the laws on the basis of his race and national origin under the Fourteenth Amendment. As such, Plaintiff requests this Court to declare Policy 3.3.6 and Procedure 5.4.1 unconstitutional and to enter an order enjoining Defendants and their employees, agents, and any and all persons acting in concert with them from further violating Plaintiff's First and Fourteenth Amendment rights.

## II. JURISDICTION AND VENUE

3. This lawsuit is brought pursuant to 42 U.S.C. § 1983 against all Defendants for actions under color of state law, in violation of the First and Fourteenth Amendments of the United States Constitution.

4. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3).

5.      This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Fed. R. Civ. P. 57, and to grant injunctive relief pursuant to Fed. R. Civ. P. 65.

6.      Venue is proper under 28 U.S. § 1391(b) and L.R. 1.11 because a substantial part of the events giving rise to the claim and the alleged wrongs occurred in Deer Lodge, Montana, located in the District of Montana, Helena Division.

7.      Plaintiff has exhausted available administrative remedies.

### III. PARTIES

8.      Plaintiff William Diaz–Wassmer is an inmate at Montana State Prison, in Deer Lodge, Montana.  Plaintiff was sentenced to 160 years; he arrived at Montana State Prison in September 2007 and has been confined there continuously since that time.  He is under the custody of the Montana Department of Corrections, and under the jurisdiction of the State of Montana.

9.      Defendant Mike Ferriter is the Director of the Montana Department of Corrections, a position he has held since 2006.  Defendant Ferriter has ultimate responsibility and authority over all DOC facilities within the State, including the Montana State Prison.  Admin. R. Mont. 20.1.101 (2007).  He is sued in his official capacity.

10. Defendant Mike Mahoney is the Warden of Montana State Prison. He is responsible for the immediate management and control of Montana State Prison. Mont. Code Ann. §53–1–204 (2009). He is sued in his official capacity.

11. Defendant Tom Wood is the Security Major at Montana State Prison. Pursuant to Procedure 5.4.1, he is responsible for overseeing the implementation of the correspondence program. He is sued in his official capacity.

12. Defendant Denise DeYott is the Mail Room Supervisor at Montana State Prison. Pursuant to Procedure 5.4.1, she is responsible for implementing the correspondence program. She is sued in her official capacity.

## IV. FACTUAL BACKGROUND

13. Plaintiff was born in Guatemala. He immigrated to the United States in 1985, when he was approximately one year old. Although Plaintiff is fluent in English, most of his family is not.

14. Plaintiff's parents were born in Guatemala and are native Spanish speakers. They best express themselves when using Spanish, their native language. Plaintiff's father speaks English with difficulty; he is unable to write or read in English. Although Plaintiff's mother speaks English well, she is able to read and write more clearly in Spanish. Many other members of Plaintiff's family with whom he communicates, including his grandmothers, aunts, and cousins are unable to speak, write, or read in English.

15.     Written correspondence is the primary way that Plaintiff communicates with his family.  Plaintiff has been in solitary confinement since February 2010, and he remains alone in his cell for approximately 22 to 23 hours a day.  In solitary confinement, Plaintiff's ability to have visitors and make phone calls has been severely limited.  From February 2010 to February 2011, Plaintiff was allowed one phone call a month.  Therefore, he communicated with his family mostly through letters.  Currently, Plaintiff is permitted one phone call per day.  Yet because of the cost, Plaintiff continues to rely primarily upon written correspondence to communicate with his family.

16.     Plaintiff is currently allowed one non–contact visit a week.  However because his family is located in California, Guatemala, and Mexico, they cannot afford the travel expenses, and have been unable to visit Plaintiff while he has been in Montana.  Plaintiff has received only one visitor in the nearly four years he has been at Montana State Prison, and that was from a friend who lives in Livingston.

17.     For the first two years of his incarceration, Plaintiff was able to correspond regularly with his parents, with some letters written in Spanish and some in English.  During this time, the prison did not hold or fail to deliver any letters written in Spanish.

18.     On May 3, 2010, however, Plaintiff received a notice of undeliverable mail for an incoming letter written in Spanish.  The notice indicated that the letter

was written from a friend. Prison staff notified Plaintiff that the letter was rejected because it was written not written in English. Plaintiff was also informed that efforts to interpret the letter were unsuccessful. Plaintiff thought this denial was an anomaly and did not pursue the matter any further because he previously did not have any difficulty receiving mail written in Spanish.

19.     On August 13, 2010, Plaintiff received a second notice of undeliverable mail; this time the letter in Spanish was from Plaintiff's father. Again, Plaintiff was informed that the letter was undeliverable solely because it was not written in English.

20.     On August 16, 2010, Plaintiff filed an informal resolution, grieving the prison's withholding of the letter from his father. Plaintiff explained that Spanish is his "native tongue," and, because of this, it is the language that he uses to communicate with his family. Plaintiff also explained that his father is able to write only in Spanish.

21.     On September 16, 2010, because Plaintiff had yet to receive an answer to his informal grievance, he filed a formal grievance. Again, Plaintiff requested to receive mail written in Spanish.

22.     However on the following day, September 17, 2010, Plaintiff received an answer to his August 13 informal resolution from the Mail Room Supervisor, Defendant DeYott. She responded that Montana State Prison does not

First Amended Complaint –6–

permit letters in Spanish.  Defendant DeYott further informed Plaintiff that Montana State Prison previously employed a Spanish interpreter, and thereby permitted letters written in Spanish; the prison stopped allowing letters when the interpreter left the prison.  Defendant DeYott also stated that once the prison found another interpreter, Plaintiff would begin to receive his letters.

23. On September 23, 2010, grievance coordinator, Billie Reich, denied Plaintiff's formal grievance.  Reich informed Plaintiff that he would not receive mail written in Spanish until the prison employs another translator.

24. On September 26, 2010, Plaintiff appealed the decision to Defendant Mahoney.  On October 18, 2010, Deputy Warden Swanson informed Plaintiff that under Procedure 5.4.1, all mail that is in "code or a foreign language" and not understood by the reader may be considered undeliverable.  Deputy Warden Swanson informed Plaintiff he had no right to receive these letters, and the prison had previously made an "exception" for him.  No other reason for the denial was provided other than the fact that the letter was not written in English.

25. On October 25, 2011, Plaintiff appealed to the Defendant Ferriter.  On October 29, 2010, Defendant Ferriter denied Plaintiff's grievance.  Plaintiff was informed that he would only be permitted to receive mail that is written in English.

26.     In early June 2011, Plaintiff mailed at least two letters to his father, both written in Spanish. However, Plaintiff's father reports that he never received either letter.

27.     Upon information and belief, each of the Defendants authorized or implemented a policy, practice, procedure, or custom that denies Plaintiff all incoming and outgoing mail because it is not written in English.

28.     All of the Defendants authorized and permitted the denial of Plaintiff's mail solely because it was not written in English.

29.     Each of the Defendants' actions and omissions set forth in this Complaint were taken under color of state law and conformed to and were taken pursuant to the official policies, practices, procedures, or customs of the Montana Department of Corrections.

30.     All of the Defendants deprived Plaintiff of his constitutional rights by enacting and implementing policies, practices, procedures, and decisions that authorized the denial of mail because it is not written in English.

31.     Defendants' policy and procedure categorically prohibits Plaintiff's incoming mail solely because it is not written in English is not reasonably related to any legitimate penological objective. Defendants' policy and procedure of categorically prohibits Plaintiff's outgoing mail solely because it is not written in

English is not necessary or essential to further a substantial government interest in security, order, or rehabilitation.

## V. FIRST CLAIM – VIOLATION OF THE FIRST AMENDMENT

32.     Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

33.     The "English–only" policy implemented by Defendants violates Plaintiff's right to freedom of speech and expression, as guaranteed by the First and Fourteenth Amendments of the United States Constitution.

## VI. SECOND CLAIM– VIOLATION OF THE EQUAL PROTECTION CLAUSE OF FOURTEENTH AMENDMENT

34.     Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

35.     The "English–only" policy implemented by Defendants violates Plaintiff's right to Equal Protection of the laws as guaranteed by the Fourteenth Amendment of the United States Constitution.

36.     For all relevant purposes, English and non–English speaking inmates convicted and sentenced in Montana and committed to the legal custody of the Montana Department of Corrections are similarly situated with respect to their right to send and receive mail.

37. Although English and non–English speaking inmates are similarly situated, Plaintiff is treated differently by not being able to receive mail from his family because it is written in Spanish.

## **RELIEF**

38. An actual and immediate controversy exists between the parties.

39. Plaintiff has no adequate remedy at law other than this action for declaratory and injunctive relief.

40. Plaintiff is suffering irreparable harm as a result of the unconstitutional actions of Defendants described herein and that harm will continue unless declared unlawful and enjoined by this Court.

WHEREFORE, Plaintiff respectfully prays that this Court:

> (1) Enter a declaratory judgment that Defendants' policies, procedures, and actions, as described in this Complaint, violate the First and Fourteenth Amendments to the United States Constitution;
>
> (2) Enjoin Defendants, their employees, agents, and any and all persons acting in concert with them from further violation of Plaintiff's constitutional rights under the First and Fourteenth Amendments of the United States Constitution;
>
> (3) Award Plaintiff the cost of this action together with reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

(4) Retain jurisdiction of this action; and

(5) Grant the Plaintiff any further relief that this Court deems necessary and just.

Respectfully submitted this 30th day of June, 2011.

/s/ Jennifer A. Giuttari
Jennifer A. Giuttari
Elizabeth L. Griffing
ACLU of Montana
P.O. Box 9138
Missoula, MT 59802
T: 406-830-3009
jeng@aclumontana.org
betsyg@aclumontana.org

First Amended Complaint –11–

# **CERTIFICATE OF SERVICE**

I, the undersigned attorney for Plaintiff, hereby certify that on this 30th day of June, 2011, a true and correct copy of the foregoing First Amended Complaint was electronically served upon the following by ECF:

1. Clerk, U.S. District Court

2. Colleen Ambrose
   cambrose@mt.gov

   Attorney for Defendants

3. Ira Eakin
   ieakin@mt.gov

   Attorney for Defendants

/s/ Jennifer A. Giuttari
Jennifer A. Giuttari
Attorney for Plaintiff
